IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Freida Lydia, | Civil Action No. 2:11-1453-DCN-BHH |
| Plaintiff, | |
| vs. | |
| Michael J. Astrue, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 37 years old on her alleged disability onset date of May 1, 2005. (R. at 9, 20, 94.) She alleged disability due to degenerative disc disease of the lumbar spine, left wrist ligament tear and surgery, chronic obstructive pulmonary disease, depression, and anxiety. (R. at 11.) She graduated from high school and went to a vocational school, after which she obtained a license in cosmetology. (R. at 35.) The plaintiff was last employed at Moss Mini Mart. (R. at 35.)

The plaintiff protectively filed an application for DIB and SSI on September 20, 2005. (R. at 9.) Her applications were denied initially and on reconsideration. (R. at 9.) After a

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

hearing before an Administrative Law Judge (ALJ) on January 22, 2009, the ALJ issued a decision on March 12, 2009, in which he found that the plaintiff was not disabled. (R. at 9-22.) The Appeals Council denied the plaintiff's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making his determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant met the insured status requirements of the Social Security Act through September 30, 2007.
>
> (2) The claimant has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, left wrist ligament tear and surgery, chronic obstructive pulmonary disease, depression, and anxiety (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925, and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, she can lift/carry 20 pounds occasionally and 10 pounds frequently, sit six out of eight hours, stand six out of eight hours, and walk six out of eight hours in a workday. She can never climb ladders, ropes, or scaffolds and is limited to frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. She is limited to occasionally reaching and handling with the left upper extremity. She must avoid fumes. She is limited to simple, one to two step tasks in a low stress environment defined as non production work with only occasional public contact.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on September 6, 1967 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4,

3

Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv. 836 (West 1983). The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 1382c(a)(3)(H)(I). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

> a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges, among other various objections, that the ALJ erred in (1) failing to consider the combined effects of her impairments; (2) failing to offer a complete hypothetical to the vocational expert; (3) failing to give controlling weight to the opinions of her treating physician; and in (4) relying on the testimony of the vocational expert that the plaintiff can perform certain jobs, when her ability to perform certain activities conflicts with the demands of those jobs as described in the Dictionary of Occupational Titles.

The Court will address each alleged error in turn.

## **I.     Combination of Impairments**

The plaintiff first argues the ALJ erred because he did not adequately consider her impairments in combination. (Pl.'s Br. at 18-21.) The plaintiff contends that the ALJ only "picked fragmented parts of the record to separately discuss Lydia's physical impairments." (R. at 12-13.) Specifically, she contends that the ALJ, although referencing the treatment notes of Dr. Howard Klickman, only focused on the "arthralgias" diagnoses made therein and not on the evidence of the plaintiff's severe mental impairments, also included. The plaintiff contends that the ALJ treated Dr. G. Preston Edwards' office notes similarly, by also ignoring his observation of mental impairments.

5

When a claimant suffers from multiple impairments, the ALJ must consider their combined effect in determining whether the claimant is disabled. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968). Congress has explicitly required that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(c); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989). As an important "corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

In *Walker*, the Fourth Circuit remanded the plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. *See id.* at 49-50. The ALJ found that the claimant suffered from several ailments and noted the effect or non-effect of each impairment separately. *See id.* The ALJ summarily concluded that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4.' Walker, 889 F.2d at 49. The Fourth Circuit rejected this conclusion as inadequate because the ALJ neither analyzed nor explained his evaluation of the cumulative effect of the claimant's impairments. *See id.* at 49-50.

Here, the ALJ specifically stated that he considered "all of the evidence" (R. at 9), "all of the claimant's impairments" (R. at 10), and the "entire record" (R. at 11) in reaching his findings of fact and conclusions of law. Even more critical than these boilerplate pronouncements, the ALJ specifically considered the plaintiff's degenerative disc disease of the lumbar spine, left wrist ligament tear and surgery, COPD, depression, anxiety, and right lower extremity impairment. (R. at 11-14.) He found that the plaintiff did not have "an impairment or combination of impairments that m[et] or medically equal[ed] one of the listed impairments." (R. at 14-15.) The ALJ went on to account for the plaintiff's limitations, considering a combination of all her impairments, by finding she could perform a range of

6

light work that did not require climbing of ladders, ropes, or scaffolds, or more than occasional reaching and handling with her left upper extremity. He also found that the plaintiff should avoid fumes and could only perform simple, one and two-step tasks in a low stress environment defined as non-production work with only occasional public contact. (R. at 15-20.)

More importantly, the plaintiff is simply wrong in her characterization of the ALJ's impairment analysis. As mentioned, the plaintiff would contend that the ALJ failed to mention evidence of mental impairments contained in Drs. Klinkman and Edward's notes. But, he plainly did. It is true that the ALJ, on page four of his decision, only considered those physicians' observations of physical impairments, in much the way the plaintiff would describe it. (R. at 12.) On the very next page, however, the ALJ noted:

> Dr. Klickman's evaluation . . . showed the claimant had an obvious sad and dejected mood. She displayed poor eye contact. She had a little increased psychomotor activity consistent with anxiety. She was not hallucinating. Insight and judgment were fair. Dr. Klickman referred the claimant to mental health counseling. . . . Dr. Edwards noted the claimant was depressed and tearful regarding stressors at home. . . . Dr. Edwards noted the claimant had a moderate depressive reaction that improved with Celexa. . . . [and] noted the claimant had anxiety and depression.

(R. at 13.) On that same page, the ALJ cited significant other evidence of the plaintiff's mental impairments from additional sources, as well. *Id.*

The irony is that the plaintiff has essentially done to the ALJ's decision, what she would contend was done to her medical record, namely, a cherry-picked treatment. This sort of deconstruction of the ALJ's decisions is not useful. The ALJ's decision must be read as a whole. The demand that the ALJ consider the combined effects of all impairments cannot possibly mean something as syntactically trivial as the names of those impairments simply appearing together in the same sentence or otherwise in very close grammatical proximity. The decision, here, speaks to a comprehensive review of the record, which

7

recognizes that the cross-informing effect of multiple impairments can create disability where it may not have existed pursuant to simply one. There is no error to recommend.

## II. Hypothetical to the Vocational Expert

The plaintiff next argues that he ALJ erred in relying on the testimony of the vocational expert ("VE") because the ALJ did not include "moderate limitation(s) in concentration, persistence, or pace" in his hypothetical question to him. (Pl. Br. at 21-23.) Specifically, the plaintiff contends that in the hypothetical to the vocational expert, the ALJ assumed only that the claimant would be limited to "simple, one to two step tasks." (R. at 59.) The plaintiff argues that such a limitation, however, by law, is insufficient to encompass the entirety of a claimant's impairments when there exists moderate deficiencies in concentration, persistence, or pace, as is present here. *See Stewart v. Astrue*, 2009 WL 859830 (7th Cir. 2009). The plaintiff concedes that the Fourth Circuit Court of Appeals has not expressly recognized this view.

But, this district, at least, while acknowledging such decisions outside the circuit, *see Ramirez v. Barnhart*, 372 F.3d 546 (3rd Cir.2004); *Winschel v. Comm'r*, 631 F.3d 1176, 1180 (11th Cir.2011), has declined to adopt an absolute rule about it. *See Sensing v. Astrue*, 2012 WL 1016581, at \*\*6-7 (March 26, 2012). In *Sensing*, the Honorable R. Bryan Harwell concluded that a VE hypothetical, which included only a limitation to "simple routine tasks or unskilled work despite limitations in concentration, persistence, and pace" was appropriate, so long as it is based on substantial evidence. *Id.*

Here, a Dr. Debra Price found that the plaintiff had a "mild" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. (R. at 236-49.) She also completed a "Mental Residual Functional Capacity Assessment," wherein she found the plaintiff was "moderately" limited in her abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration for

8

extended periods, and interact appropriately with the general public. (R. at 250-53.) Dr. Price concluded that the plaintiff could carry out simple tasks for two hours at a time without special supervision, but would be best suited for a work setting with limited public contact. *Id.*

Similarly, Dr. Xanthia Harkness found, in applying the "Psychiatric Review Technique" that the plaintiff had a "mild" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (R. at 295-308.) She, like Dr. Price, completed a "Mental Residual Functional Capacity Assessment," wherein she found the plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public. (R. at 309-12.) Based on these summary conclusions derived from the record evidence, Dr. Price concluded that the plaintiff could perform unskilled work that did not require constant contact with the general public. *Id.*

The ALJ specifically noted and relied upon these opinions. (R. at 19.) They constitute substantial evidence upon which the ALJ might have, and apparently did, conclude that the plaintiff could perform simple, one to two step tasks even where there exists moderate deficiencies in concentration, persistence, or pace. The plaintiff has not challenged the evidence, itself. She simply has alleged, as an absolute legal matter, that the hypothetical cannot be limited to a functional description, where more nuanced deficiencies in concentration, persistence, or pace exist. But, Judge Harwell has rejected that strict view and, until further notice, it is not the law of this circuit or district.

The Court does not find error.

**III.    Examining Physician**

9

The plaintiff also contends that the ALJ committed reversible error in his consideration of the medical opinions of examining physician, Dr. James N. Ruffing. On March 15, 2006, Dr. Ruffing performed a consultative examination at the request of the defendant. (R. at 233-235.) At that time, the plaintiff reported that she continued to be affected by a child-hood trauma – she witnessed her father shot himself in the chest with a gun when she was young. On examination, the plaintiff's "presentation was marked by tension, sadness, and tearfulness." *Id.* She had significant difficulty regulating and controlling her emotions." *Id.* Her overall affect was "constricted towards the depressed end of the continuum." *Id.* Dr. Ruffing stated that the plaintiff "endorsed both emotional and neurovegetative signs of depression" and did demonstrate "psychomotor retardation." *Id.* The plaintiff was fully oriented and her thoughts were relevant and coherent. *Id.* Her capacity to attend and focus was impaired and there was "slowing" noted to the speed of her cognitive processing. *Id.*

Dr. Ruffing stated,

> Given the chronicity of her complaints, there are indications for 300.4, dysthymic disorder of a severe level. It is possible that this may have progressed into a major depressive disorder, though again, the chronicity would be suggestive of dysthymia.

(R. at 234.)

Dr. Ruffing found the plaintiff had the following functional capacity:

> She can understand and respond to the spoken word. However, she had signifi-cant difficulty focusing and attending. She does demonstrate poor emotional stability. She would have impaired capacity for persistence, pace, and concen-tration. She would have difficulty performing more than simple tasks, and would struggle to understand, remember, and carry out more than simple in-structions. She does appear to have minimal faculties necessary to manage her finances, but given her emotional distress, she may benefit from assistance in these affairs.

(R. at 235.)

On January 28, 2009, Dr. Ruffing completed a mental status examination at the request of the plaintiff's attorney. (R. at 340-346.) Dr. Ruffing said he reviewed the plaintiff's

medical records, including a report from Dr. Mourtada, records from Spartanburg Area Mental Health, and his own report and records from his previous evaluation done for the Administration in 2006. *Id.* Dr. Ruffing elicited an extensive history and performed a clinical evaluation. *Id.* The plaintiff "demonstrated some constriction and flattening to her affective presentation. *Id.* Her mood appeared predominately depressed with observed lethargy and psychomotor retardation." *Id.* The plaintiff was oriented and had no problem with thought processes or thought content. *Id.* Dr. Ruffing stated that the plaintiff was inconsistent in her capacity to attend and focus secondary to emotional distress. *Id.* She had slowing of her speed of cognitive functioning consistent with evidence for psychomotor retardation. *Id.* The plaintiff's memory was unremarkable and her she demonstrated ability for basic general knowledge and simple calculations. *Id.* Dr. Ruffing found support for the following diagnoses: major depressive disorder, recurrent, severe, without psychotic features; panic disorder with agoraphobia; and, a GAF of 50. *Id.* Dr. Ruffing's prognosis was as follows:

> Ms. Freda Lydia's prognosis related to her emotional functioning is poor. Emo-tional dysfunction has been long-standing with emotional dysfunction dating to at least my first contact with Ms. Lydia in March 2006. Despite treatment efforts, her condition has been refractory to psychiatric and psychological treatment efforts.
>
> It is my professional opinion that Ms. Lydia has maintained the mental compe-tency necessary to manage her finances.
>
> It is my professional opinion, based on Ms. Lydia's interpersonal interaction and emotional functioning during this examination, she would have significant emotional instability and psychological and emotional difficulty interacting appropriately with the public or co-workers.
>
> It is my professional opinion that Ms. Freda Lydia would struggle, secondary to emotional dysfunction, to manage the concentration, persistence, and pace required in a typical 8-hour workday.

(R. at 346.)

On the same day, Dr. Ruffing completed a statement indicating the percentage of an 8-hour workday that Lydia was could perform various work-related activities was as follows:

11

> Follow work rules – 80%; Relate to co-workers – 40%; Deal with the public – 50%; Use judgment – 80%; Interact with supervisors – 40%; Deal with ordi-nary work stresses – 30%; Function independently – 80%; Maintain attention and concentration – 30%; Understand, remember, and carry-out complex job instructions; Understand, remember, and carry-out detailed, but not complex, job instructions – 70%; Understand, remember, and carry-out simple job in-structions – 90%; Maintain personal appearance – 90%; Behave in an emo-tionally stable manner – 50%; Relate predictably in social situations – 50%; and Demonstrate reliability – 40%.

(R. at 338-339.)

Dr. Ruffing stated these limitations were secondary to depression and anxiety, as well as, emotional dysfunction. (R. at 338-339.)

The agency's regulations require that it evaluate every medical opinion it receives. *See* 20 C.F.R. § 404.1527(d). "Medical opinions" are defined as

> [S]tatements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite your impairment(s),and your physical and mental restrictions.

*Id.* § 404.1527(a)(2). The regulations reserve opinions on some issues to the Commissioner, including whether an individual is disabled under the Act. See id. § 404.1527(e). In measuring an examining source opinion, the Commissioner considers the following factors in deciding how much weight to give it:

- Supportability, i.e., whether the source provided support and explanation for his or her opinion, see id. § 404.1527(d)(3);

- Consistency, i.e., whether the opinion is consistent with the record as a whole, see id. § 404.1527(d)(4);

- Specialization, i.e., a specialist's opinion (related to area of specialty) generally receives greater weight than an opinion from a non-specialist, see id. § 404.1527(d)(5); and

12

> - Any other factors that tend to support or contradict the opinion, see id. § 404.1527(d)(6).

The ALJ's analysis was as follows:

> I give little weight to Dr. Ruffing's opinions. Dr. Ruffing's opinions are not consistent with the substantive evidence of the record, but show more significant findings than other evidence. Moreover, Dr. Ruffing's evaluation, which was ordered by claimant's attorney, shows much more significant findings than the March 2006 evaluation. The other substantive evidence of record shows the claimant improved with treatment and was not fully compliant with treatment. There were also significant gaps in treatment. As discussed above, I find the claimant is certainly limited by her depression and anxiety, but she is not as limited as Dr. Ruffing describes. It appears that Dr. Ruffing based his opinion largely on the claimant's subjective allegations.

(R. at 20.) The Court wants always to be deferential to the hard job of the administrative judge and the volume of casework but has had increasing difficulty accepting these kinds of explanations. Dr. Ruffing is not a treating source, as the regulations would define him, and his opinions are not subject to that legal rubric, but an ALJ still has an obligation to make clear his reasoning and to consider examining sources based on the factors above. Even though the defendant would offer now, in a post-hoc fashion, various inconsistencies, the ALJ himself offered none. The most specific indication as to his rationale was his view that Dr. Ruffing's 2009 assessment contained more significant findings than his March 2006 evaluation. Respectfully, this is no reason at all. That her condition might have changed or disability worsened over a *three year* period seems consistent with what you might expect, not suspicious. Either way, it is a sheer guess and non-sequitur, as articulated, to derive any conclusion by the simple disparity in evaluation over such a significant span. In the same way, the ALJ's generic statement that Dr. Ruffing's opinion was "not consistent with the substantive evidence of record" and that he made more significant findings "than other evidence" is not acceptable. (R. at 20.) This is not a reviewable explanation.

The parties have debated some of the inconsistencies possibly implied by the ALJ's decision and whether or not simply some, or actually all, of his rationale must be discredited before remand is justified. The Court need not resolve it fully. But, the plaintiff has put forward serious evidence that even were the ALJ to have explained himself better than he did, the conclusions are not reflective of the actual condition of the record. For instance, the ALJ summarily stated that the plaintiff was generally responsive to treatment. Dr. Ruffing stated, "Despite treatment efforts, her condition has been refractory to psychiatric and psychological treatment efforts." (R. at 346.) Other evidence of record supports this conclusion of Dr. Ruffing that the plaintiff did not respond to treatment. Dr. Klickman explained that the plaintiff's depression was resistant to "treatment by two different types of anti-depressant medications." (R. at 337.) The plaintiff has also put forward evidence that Dr. Ruffing's opinions were largely consistent with Dr. Klickman's treating physician records and two pscychological evaluations in 2005 and 2006. (R. at 209, 283, 337.)

The plaintiff makes some case that the only evidence that could be viewed as contradictory to Dr. Ruffing's opinions is that of the state agency physicians. (R. at 236, 295.) And, the plaintiff is correct to emphasize that while non-examining sources can be relied upon, the Fourth Circuit has warned that where such sources are contradicted by all of the other evidence of record, they are not substantial. *See Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir.1986). Again, however, the Court does not need to decide precisely what degree of contradiction or consistency actually exists. The ALJ did not explain his rationale and it is enough that evidence exists from which he might be viewed as wrong. In other words, his failure to be more clear cannot be dismissed as merely harmless.

The ALJ's explanation is too general on its face and does not procedurally recognize that a differential between an examing physician's opinion and the remainder of the record, by some order of magnitude, might actually prove her case rather than defeat it. That there

14

simply exists "differences" cannot possibly be the end of the inquiry. The question is, as between those differing views, which source is more reliable? So the fact that "other substantive evidence of record shows the claimant improved with treatment and was not fully compliant with treatment" (R. at 20) is just an observation about the record not a proof. The ALJ must take the added step of explaining how that differing disability opinions should be distinguished.

Of course, an ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations omitted). Even still, courts have consistently held that unexplained and rote observations that an opinion is simply inconsistent with treatment notes or the record, by itself, is not a sufficient basis to reduce the opinion's weight. *See Cagle v. Astrue*, 266 Fed. Appx. 788 (10th Cir. 2008) (stating "the ALJ failed to explain or identify what the claimed inconsistencies were between opinion and the other substantial evidence in the record," and concluded that the ALJ's reasoning was not "sufficiently specific to enable this court to meaningfully review his findings" (quotations omitted).); *Langley v. Barnhart*, 373 F.3d 1116, 1122 (10th Cir.2004).

The Court cannot affirm it here.

### IV. Vocational Expert Testimony

Lastly, the plaintiff contends that the jobs cited by the vocational expert (VE) as ones the plaintiff could perform, merchant patroller and maid, were inconsistent with the job

descriptions contained in the U.S. Department of Labor's Dictionary of Occupational Titles (4th ed., Rev. 1991) (DOT). Specifically, she argues that while the ALJ asked the vocational expert to consider a hypothetical individual who was limited to "handling, left upper extremity, occasional" and "simple, one, two step tasks," the job of merchant patroller, requires specific vocational preparation ("SVP") of 3, which correlates with semi-skilled work. The plaintiff also argues that the job of maid requires moving furniture, hanging drapes, folding linens, carrying linens, rolling carpet, and possibly rendering personal assistance. The defendant appears to concede the conflict between the testimony and the merchant patroller work. (See Def. Brief at 27.)

That conflict, however, is harmless even as it may have been left unresovled, if the maid work is still available to the plaintiff. Considering that job, the defendant emphasizes the "performing any combination" portion of the following description:

> [P]erforming any combination of the following duties: Sorts, counts, folds, marks, and carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.

DOT § 323.687-014. The defendant argues that some combination of the sorting, counting, folding, marking and carrying linens, making beds, replenishing supplies, and checking wraps activities can be performed using just one upper extremity. The plaintiff departs from this view.

The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is ***an apparent unresolved conflict*** between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The

16

> adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p (emphasis added). A VE's conflicting testimony can be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished). Almost precisely because it is not obvious that a maid can or cannot perform some combination of those activities with one hand, it is difficult to conclude that the plaintiff has identified any "apparent unresolved conflict" about which the ALJ should have inquired more. The Court, therefore, cannot characterize the ALJ's trust in the expert opinion of the VE, that such activities can be performed without conflict, error.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore , RECOMMENDED, for the foregoing reason, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                                          s/BRUCE H. HENDRICKS
                                                         UNITED STATES MAGISTRATE JUDGE

July 25, 2012
Charleston, South Carolina